UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RED APPLE MEDIA, INC., | |
| Plaintiff, | 23-cv-10253 (JSR) |
| -v- | OPINION |
| JOHN BATCHELOR, UNION RIVER PRESS, INC., AUDIOBOOM LIMITED, THE WEISS AGENCY, INC., and NICHOLAS G. MALONE, | |
| Defendants. | |

JED S. RAKOFF, U.S.D.J.:

This is either a copyright dispute or a breach of contract case, depending on which party you ask. Plaintiff Red Apple Media, Inc., through its predecessors-in-interest, was the producer of a radio show and podcast known as the John Batchelor Show. According to the complaint, the show's eponymous host, John Batchelor, cut plaintiff out of its role in distributing the podcast version of the show by granting exclusive podcast distribution rights to Audioboom Limited ("Audioboom") even though plaintiff had a preexisting agreement with Audioboom to distribute the show. Plaintiff alleges that Batchelor, Audioboom and their agent The Weiss Agency ("Weiss") committed breach of contract and a slew of torts by wrongly removing plaintiff from the podcast distribution of the show.

Defendants moved to dismiss, in whole or in part, Counts One through Four and Six through Eleven[1] of plaintiff's complaint on the grounds that (a) the claims are preempted by the Copyright Act and/or (b) the complaint fails to state a claim. *See* Dkts. 12, 16.[2] Plaintiff cross-moved to remand the case to New York State court. *See* Dkt. 18. By "bottom-line" Order dated February 21, 2024, the Court granted in part and denied in part defendants' motions to dismiss and denied plaintiff's motion to remand. *See* Dkt. 22. This Opinion sets forth the reasons for those rulings.

## I. <u>Background & Factual Allegations</u>

This case revolves around the John Batchelor Show, a radio talk show hosted by John Batchelor that featured interviews with public figures. Compl. ¶ 2. The case turns on three agreements concerning the distribution of the John Batchelor Show, described in more detail below.

**The Batchelor Agreement.** In 2012, defendant Batchelor, through his shell company Union River Press (which is included in the references below to "Batchelor") and plaintiff Red Apple Media, through its predecessor-in-interest WABC Radio, entered into an agreement

---

[1] The complaint incorrectly identified two claims as Count Ten. The Court treats the second of these, a claim for an accounting, as Count Eleven.

[2] Count Five of the complaint asserts claims against defendant Nicholas Malone. Malone's counsel appeared at oral argument but had not entered an appearance in the case and has not filed a motion to dismiss this claim. Accordingly, Count Five will remain in the case.

(the "Bachelor Agreement") whereby Batchelor would serve as the host of a radio show called the John Batchelor Show. *Id*. ¶¶ 13-15. Pursuant to the agreement, plaintiff would produce the John Batchelor Show, pay Batchelor an annual salary as well as a share of revenues earned from the show, and pay all related expenses in producing the show. *Id.* ¶ 15.

The Bachelor Agreement was amended in 2015 to extend its term through 2016. *Id.* ¶¶ 18-19. As part of this amendment, the scope of the Bachelor Agreement was expanded to encompass revenues earned through podcasting. *Id.* The Bachelor Agreement was amended a second time in 2017 to extend its term through December 31, 2018. *Id.* ¶ 20. As amended, the Batchelor Agreement "set a formula for the percentage" of revenues generated through distribution of the show via podcast "to be allocated to Batchelor and Plaintiff's predecessors-in-interest." *Id*. ¶ 19.

The second amendment to the Batchelor Agreement also provided that "if [Batchelor] enters into a definitive agreement for podcasts only . . . [Batchelor] shall have the right to terminate the podcast portion of this Agreement . . . by providing written notice on or prior to January 28, 2017, such termination to be effective on February 28, 2017 regardless of when notice is given." *Id.* ¶ 21. The complaint alleges that Batchelor never provided this notice and so "the terms that governed the parties' share of podcasting revenue continued in effect." *Id.* ¶ 21.

The Bachelor Agreement, by its terms, expired on December 31, 2018. However, the complaint alleges that "the parties, through their course of dealing, continued to act as though they were governed by the terms of the agreement," and "Plaintiff and its predecessor-in-interest continued to compensate Batchelor, and provide the Show with Plaintiff's resources, as they had under the" Bachelor Agreement. *Id.* ¶ 23. "The John Batchelor Show was broadcast on WABC Radio, and was syndicated on other radio stations around the country, from in or about 2012 through March 5, 2021." *Id.* ¶ 25.

**The CM-Audioboom Agreement.** In 2015, Cumulus (another predecessor-in-interest of plaintiff) and defendant Audioboom entered into an agreement (the "CM-Audioboom Agreement") whereby Audioboom would distribute content owned by Cumulus, including the John Batchelor Show. *Id.* ¶¶ 34-35. The CM-Audioboom Agreement granted Audioboom the non-exclusive right to syndicate (i.e. sell/distribute) the John Batchelor show to third-party apps and websites, and specified the percentage of advertising revenue that Audioboom would pay back to Cumulus resulting from these distribution efforts. *Id.* ¶¶ 36-37. A 2017 amendment to the CM-Audioboom Agreement specifically provided that Audioboom "shall receive thirty percent (30%) of Adjusted Gross Receipts from Advertisements sold by [Audioboom] for the John Batchelor podcast," and Cumulus would receive the remaining 70%. *Id.* ¶ 46. It also specified that Audioboom would account to Cumulus on a monthly basis for those advertising revenues. *Id.* Plaintiff alleges "Audioboom inconsistently provided payments and other account statements" and

4

"[t]hose payments and statements provided to Plaintiff were incomplete and inaccurate." *Id.* ¶ 48.

The CM-Audioboom Agreement provided for a three-year initial term that would automatically be renewed on a yearly basis thereafter until either party provided written notice of termination, in which case the agreement would terminate after 120 days. *Id.* ¶ 39.[3] The CM-Audioboom Agreement also provided that upon termination, "[Audioboom] shall remove any [Cumulus] Content from its Platform and [Audioboom] Players and Advertisements from its System . . . . Any information related to the users of the Platform who accessed [Cumulus] Content shall be shared with [Cumulus] and such information shall not be used by [Audioboom] after the termination of this Agreement." *Id.* ¶ 42. Plaintiff alleges the CM-Audioboom Agreement was not terminated until March 3, 2021. *Id.* ¶ 41.

**The Batchelor-Audioboom Agreement**. In December 2019, Batchelor and Audioboom entered into an agreement (the "Batchelor-Audioboom Agreement") whereby Audioboom would be granted the exclusive right to distribute the John Batchelor Show via podcast and, in exchange, Batchelor would be paid 75% of net revenues from advertising sold in connection with the show. *Id.* ¶¶ 49, 54, 56-62. The Batchelor-Audioboom Agreement provided for a one-year term, with an automatic year-to-year renewal. *Id.* ¶ 53. However, it expressly granted Batchelor

---

[3]     The CM-Audioboom Agreement also provided for a 30-day termination window if a party in material breach failed to cure the breach within 30 days of receiving written notice. *Id.* ¶ 40.

the right to "request an immediate renegotiation or termination of [the] agreement" upon the completion of any purchase of WABC Radio by plaintiff Red Apple or another potential purchaser. *Id.* Plaintiff alleges that it was not aware of the Batchelor-Audioboom Agreement when it was negotiated, although plaintiff does not allege when it learned of that agreement. *See Id.* ¶ 49.

Plaintiff claims that, in effect, Batchelor and Audioboom, through the Batchelor-Audioboom Agreement, cut plaintiff out as the middleman distributing the John Batchelor show and took the advertising revenue owed to plaintiff for themselves. Plaintiff alleges that as a result of the Batchelor-Audioboom Agreement, Audioboom breached the CM-Audioboom Agreement and Batchelor breached the Batchelor Agreement (or the implied-in-fact contract that continued after it expired).

**The Weiss Agency.** Plaintiff offers various conflicting allegations against defendant Weiss. Weiss allegedly had a roll in negotiating the CM-Audioboom Agreement and Batchelor-Audioboom Agreement. *See id.* ¶¶ 3, 70, 72-73. In 2021, Weiss was also allegedly acting as Batchelor's agent. *See id.* ¶ 75. However, the complaint also alleges that Weiss served as plaintiff's agent at various, unspecified times. *See id.* ¶¶ 3, 145. Plaintiff alleges that Weiss facilitated the negotiation of the Batchelor-Audioboom Agreement, using its inside knowledge of the CM-Audioboom agreement, and thereby breached fiduciary duties Weiss owed to plaintiff. *See id.* ¶¶ 70-73, 145.

**Malone.** The final defendant, Nicholas Malone, was an employee of plaintiff who worked exclusively as a producer on the John Batchelor

Show from 2012 to 2021. *Id.* ¶¶ 26-28, 79. Plaintiff alleges that Malone, at Batchelor's urging, provided Audioboom with copies of the John Batchelor Show pursuant to the Batchelor-Audioboom Agreement without plaintiff's knowledge or authorization. *Id.* ¶¶ 63-67. Plaintiff further alleges that, after plaintiff confronted Batchelor, Batchelor instructed Malone to steal hard drives from WABC Radio that contained prior recordings of the John Batchelor Show. *Id.* ¶¶ 76-78.

**Procedural History.** This is not the first time a dispute between these parties is before the Court. In 2022, plaintiff filed its first action in state court based on a similar factual predicate. Defendants removed that case based upon the Copyright Act, and plaintiff moved to remand. The Court denied the motion to remand, holding that several of plaintiffs' claims were preempted by the Copyright Act -- including claims for common-law copyright infringement, conversion, and unjust enrichment -- and therefore concluded that the Court had jurisdiction. *See Red Apple Media, Inc. v. Batchelor* (hereinafter "*Red Apple I*"), 636 F. Supp. 3d 468 (S.D.N.Y. 2022). The Court further noted that "there are strong arguments that Red Apple's breach of contract claims would also be completely preempted." *Id.* at 475. The Court ultimately did not resolve that question, however, because before briefing on defendants' motion to dismiss was complete, plaintiff voluntarily dismissed its case pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

Almost a year later, plaintiff re-filed its action in state court and the case was again removed. To avoid Copyright Act preemption and

removal, plaintiff this time sought to frame its case as one for breach of contract, focusing on the advertising revenues it was allegedly owed rather than the misappropriation of the show itself, although the core events giving rise to liability remained the same. Now, however, the operative complaint alleges the following claims: (1) money had and received; (2) misappropriation of corporate opportunity; (3) unjust enrichment; (4) unfair competition based on misappropriation of another's labors and expenditures; (5) breach of fiduciary duty; (6) aiding and abetting breach of fiduciary duty; (7) breach of contract; (8) tortious interference with contract; (9) breach of implied-in-fact contract; (10) tortious interference with implied-in-fact contract; and (11) accounting. *See* Dkt. 1-3.

Defendants Batchelor, Audioboom and Weiss moved to dismiss, in whole or in part, all counts against them on the grounds of Copyright Act preemption and/or for failure to state a claim. Specifically, these defendants moved to dismiss Counts One, Two, Three, Four, Six, Seven (partially), Eight, Ten and Eleven on the grounds of Copyright Act preemption. Defendants also moved to dismiss Counts Two, Eight, Nine, Ten, and Eleven for failure to state a claim. After the filing of these motions to dismiss, plaintiff cross-moved to have the case remanded to state court.

## II.  <u>Discussion</u>

### A. <u>Motion to Dismiss - Copyright Act Preemption</u>

Section 301(a) of the Copyright Act preempts all state law claims asserting "legal or equitable rights that are equivalent to any of the

exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished." 17 U.S.C. § 301(a). "The Copyright Act exclusively governs a claim when: (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004). "The first prong of this test is called the 'subject matter requirement,' and the second prong is called the 'general scope requirement.'" *Id.*

Plaintiff offers the cursory argument that the subject matter requirement is not satisfied here "because none of the claims are being applied to a particular work, but relate instead to: (1) the advertisement revenue generated from Show podcasts; and (2) the fiduciary duties" that were allegedly breached. Pls. Opp. at 4. This argument improperly conflates the first and second prongs of the analysis. The first prong simply asks whether there is a work that may fall within the type of works protected by copyright, which the John Batchelor Show undeniably does. The second prong then addresses the relationship between that work and the rights plaintiff seeks to vindicate. The question of copyright preemption therefore turns here

on whether the general scope requirement is satisfied as to each particular claim.

"The general scope requirement is satisfied," such that Copyright Act preemption applies, "only when the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law." *Briarpatch*, 373 F.3d at 305. In making this determination, courts ask whether "the state law claim . . . include[s] any extra elements that make it qualitatively different from a copyright infringement claim." *Id.* However, "not all 'extra elements' are sufficient to remove the claim from the 'general scope' of copyright." *In re Jackson*, 972 F.3d 25, 43 (2d Cir. 2020); *see Briarpatch*, 373 F.3d at 306 ("[The Second Circuit] take[s] a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim."). For example, the addition of an element requiring proof of "'[a]wareness or intent' would not render the state-law claim qualitatively different, although 'breach of fiduciary duty' would." *Red Apple I*, 636 F. Supp. 3d at 473 (quoting *Briarpatch*, 373 F.3d at 306). Ultimately, the analysis "requires a holistic evaluation of the nature of the 'rights sought to be enforced,' and a determination whether the state law action 'is *qualitatively* different from a copyright infringement claim.'" *Jackson*, 972 F.3d at 44 n.17 (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992)).

1. <u>Breach of Contract (Against Audioboom) - Count Seven</u>

Plaintiff alleges Audioboom breached the CM-Audioboom Agreement by entering into the Batchelor-Audioboom Agreement, by wrongfully withholding revenues owed under the CM-Audioboom Agreement, by continuing to use customer information relating to the show after termination of the CM-Audioboom Agreement and by continuing to distribute the show after termination of the CM-Audioboom Agreement. *See* Compl. ¶¶ 117-121. Audioboom argues plaintiff's breach of contract claim is preempted only as to the last of these purported breaches, concerning the continued distribution of the show. *See* Audioboom MTD, at 12.

Whether a breach of contract claim is preempted depends on the precise nature of the contract right being enforced. *See Canal+ Image UK Ltd. v. Lutvak*, 773 F. Supp. 2d 419, 444 (S.D.N.Y. 2011) ("[W]hether contract claims are preempted by the Copyright Act does not lend itself to a bright-line rule. Rather, whether a given contractual promise renders a claim qualitatively different than a copyright claim must depend on what the promise is."). On the one hand, a breach of contract claim is preempted insofar as it simply seeks to vindicate one of the rights protected by the Copyright Act (*i.e.* the right to distribute, reproduce, display ect. the work).[4] On the other hand, where a contract

---

[4]    *See, e.g.*, *ML Genius Holdings LLC v. Google LLC*, 2022 WL 710744, at *4 (2d Cir. Mar. 10, 2022) (concluding contract claim alleging defendants "breache[d] Genius's Terms of Service regarding the copying and reproduction of Genius [c]ontent," without more, was preempted under Copyright act); *see also* 1 Nimmer on Copyright § 1.15 (2024) ("[P]reemption should be found absent to the extent that a

claim seeks to vindicate a right beyond those provided by Copyright law, such as a promise to pay, the claim is not preempted.[5]

For example, in *Forest Park* plaintiffs shared the script of a show they had created with the defendants, a TV network, and then engaged in various discussions with defendants about having it produced. 683 F.3d at 428. The discussions went nowhere and the show was not produced at the time, but several years later defendants came out with a similar show based on the same premise as plaintiffs' show, without ever giving plaintiffs credit or paying plaintiffs' for the script. *Id.* Plaintiffs sued, alleging, among other things, that through their discussions the parties entered into an implied-in-fact contract whereby defendants agreed to compensate plaintiffs for the show. *Id.* at 428-29. The Second Circuit found this claim not to be preempted because "[a] claim for breach of a contract including a promise to pay is qualitatively different from a suit to vindicate a right included in the Copyright Act." *Id.* at 433.

---

breach-of-contract cause of action alleges more than simply reproduction (or adaptation, distribution, etc.) of a copyrighted work."); *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 48 (2d Cir. 2019) ("[P]reemption cannot be avoided simply by labeling a claim 'breach of contract.'") (quotation omitted)).

[5]    *See Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 431 (2d Cir. 2012); *We Shall Overcome Found. v. Richmond Org., Inc. (TRO Inc.)*, 221 F.Supp.3d 396, 412 (S.D.N.Y. 2016) ("A contract claim may escape preemption if it seeks to vindicate rights, such as a promise to pay, that are qualitatively different from those included in the Copyright Act.").

Here, Audioboom argues plaintiffs breach of contract claim is partially preempted only "insofar as it relates to Audioboom's alleged distribution of the Show after the parties' agreement ended." Audioboom MTD, at 12. The complaint alleges that Section 6(c) of the CM-Audioboom Agreement required Audioboom to "remove any CM Content from its Platform and AB Players and Advertisements from its System" upon termination of the agreement, and that Audioboom breached this provision by "fail[ing] to remove Show content from its Platform and AB Player." Compl. ¶¶ 42-43; *see also id*. ¶ 120 ("Audioboom further breached the CM-AB Agreement by not removing any and all Show content from its 'Platforms and AB Players and Advertisement' . . . .").

The Court agrees that this portion of plaintiff's breach of contract claim is preempted. A claim, such as this, that defendant distributed a particular work in violation of an agreement not to do so, without any other reciprocal promise, simply reasserts the same rights protected by the Copyright Act. Indeed, several courts in this District have found substantively identical breach of contract claims preempted where they alleged the wrongful ongoing use of copyrighted material after the expiration of a license. *See Canal*, 773 F. Supp. 2d at 444-46 (concluding contract claim was preempted where it alleged defendants breached contract by continuing to use copyrighted material after license expired); *Shepard v. Eur. Pressphoto Agency*, 291 F. Supp. 3d 465, 475 (S.D.N.Y. 2017) (concluding contract claim was preempted where it alleged defendants "displayed, reproduced, published, distributed, and otherwise made use of the [plaintiff's]

artworks beyond the expiration of the one day term in the license agreement").

Plaintiff does not meaningfully engage with Audioboom's argument on this score. Instead, plaintiff argues that various other aspects of its breach of contract claim -- such as its claim that Audioboom breached the agreement by failing to pay plaintiff advertising revenues it owed -- are not preempted. The Court agrees these portions of plaintiff's claim likely are not preempted, but Audioboom never argued they were, instead limiting its motion to the alleged breach of the post-termination distribution provision.

While plaintiff asserts "[n]othing about Count VII concerns what Audioboom could or could not do to the copyrightable work itself," Pls. Opp. at 7, this assertion is belied by the unambiguous allegations of the complaint. *See* Compl. ¶¶ 43 ("In breach of Section 6(C), Audioboom has failed to remove Show content from its Platform and AB Players"), 120 ("Audioboom further breached the CM-AB Agreement by not removing any and all Show content from its 'Platforms and AB Players and Advertisement' . . . ."). Plaintiff's attempt to abandon those portions of its complaint that are clearly preempted does not justify denying the motion to dismiss or in any way undermine the Court's subject matter jurisdiction. *See Red Apple I*, 636 F. Supp. 3d at 473-74 (explaining that attempt to dismiss preempted claim in footnote does not undermine subject matter jurisdiction "because courts evaluate a defendant's right to remove a case to federal court at the time the removal notice is filed" (internal quotation marks

omitted)). Accordingly, the Court, in its Order of February 21, 2024, granted Audioboom's motion to dismiss Count VII insofar as it was predicated upon Audioboom's failure to remove the John Batchelor Show from its platform following termination of the CM-Audioboom Agreement.

### 2. Tortious Interference with Contract (Against Batchelor and The Weiss Agency) - Count Eight

Plaintiff alleges that Batchelor and Weiss tortiously interfered with the CM-Audioboom Agreement by wrongly inducing Audioboom's breach. *See* Compl. ¶¶ 123-127. Batchelor and Weiss argue this claim is preempted in its entirety because the underlying breach involved "Audioboom wrongly secur[ing] for itself a right to exclusivity" to distribute the John Batchelor Show podcast. Batchelor MTD, at 15 (quoting Compl. ¶ 60).

To state a claim for tortious interference with contract, plaintiff must allege "(1) the existence of a valid contract between the plaintiff and a third party, (2) the defendant's knowledge of that contract, (3) the defendant's intentional procurement of a third-party's breach of contract without justification, and (4) damages." *Kaplan v. Reed Smith LLP*, 919 F.3d 154, 160 (2d Cir. 2019) (quotation omitted). In general, "tortious interference [claims] based on the unauthorized publication of a work protected by the Copyright Act are preempted." *Ranieri v. Adirondack Dev. Grp., LLC*, 164 F. Supp. 3d 305, 357 (N.D.N.Y. 2016) (quotation omitted). This is true notwithstanding the fact that such a claim includes the "additional elements of awareness and intentional interference," because these elements are

not, by themselves, sufficient to remove a claim for tortious interference from Copyright Act preemption. *Harper & Row Publishers, Inc. v. Nation Enterprises,* 723 F.2d 195, 201 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985).

Notwithstanding the forgoing, the question of whether a tortious interference with contract claim is preempted must depend upon the nature of the underlying breach of contract that was purportedly induced. Among the elements of a tortious interference with contract claim is the requirement that the plaintiff prove such an underlying contractual breach. Insofar as that underlying breach of contract claim would not be preempted, it follows from the logic of the extra element test -- employed by the Second Circuit -- that a claim asserting tortious inducement of that same breach would also not be preempted.

Here, the underlying breach of contract claim against Audioboom is largely not preempted. The Second Circuit has squarely held that "[a] claim for breach of a contract including a promise to pay is qualitatively different from a suit to vindicate a right included in the Copyright Act and is not subject to preemption." *Forest Park*, 683 F.3d at 433. The breach of contract claim against Audioboom is in large measure predicated upon a breach of a promise to pay plaintiff a portion of the advertising revenues Audioboom generated, which plainly constitutes a non-preempted "promise to pay." It would make no sense for a tortious interference claim predicated upon this breach, which requires proof of all the elements of the underlying contract

claim and more, to be preempted. Accordingly, the Court, in its Order of February 21, 2024, declined to dismiss plaintiff's tortious interference with contract claim against Batchelor and Weiss (Count Eight) on preemption grounds.[6]

### 3. Money Had and Received (Against Batchelor and Union River) and Unjust Enrichment (Against Batchelor, Union River Press, Audioboom, and The Weiss Agency) – Counts One and Three

Plaintiff asserts two quasi-contract claims for money had and received (Count One) and unjust enrichment (Count Three). *See* Compl. ¶¶ 82-87, 96-99. Defendants have moved to dismiss both claims on the grounds of Copyright Act preemption. The elements of these quasi-contract claims are substantially similar and they raise the same issues for purposes of Copyright Act preemption.[7]

"Theories of implied-in-law contract, quasi-contract, or unjust enrichment differ significantly from breach of contract" claims for purposes of Copyright Act preemption. *Forest Park Pictures*, 683 F.3d

---

[6]    To the extent the complaint alleges Batchelor and Weiss wrongfully induced Audioboom to breach the prohibition on continuing to disseminate the show after termination of the agreement, as opposed to any promise to pay, this claim is preempted to the same extent as plaintiff's breach of contract claim against Audioboom.

[7]    The elements for a claim of money had and received are: "(1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." *Middle E. Banking Co. v. State St. Bank Int'l*, 821 F.2d 897, 906 (2d Cir. 1987) (quotation omitted). The elements of a claim for unjust enrichment are "(1) the [defendant] was enriched, (2) at [the plaintiff's] expense, and (3) that it is against equity and good conscience to permit [the defendant] to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (internal quotation marks omitted).

at 432. "Under these quasi-contractual theories, the plaintiff need only prove that the defendant was unjustly enriched through the use of her idea or work. Such a claim is not materially different from a claim for copyright infringement that requires a plaintiff to prove that the defendant used, reproduced, copied, or displayed a copyrighted work." *Id.* Whereas a breach of contract claim applies only against the counter-party to a valid contract who has consented to the arrangement, claims predicated on a contract implied-in-law may apply against the world, making them much more akin to the kind of intellectual property claims authorized (and hence preempted) by the Copyright Act. *See id.* at 432.[8]

Thus, a quasi-contract claim is preempted by the Copyright Act insofar as the defendant's retention of money is "only unjust if the [d]efendants do not own the relevant portions of a copyright." *Saint-Amour v. The Richmond Org., Inc.*, 388 F. Supp. 3d 277, 292 (S.D.N.Y. 2019); *see, e.g.*, *Briarpatch*, 373 F.3d at 306 (concluding unjust enrichment claim was preempted); *We Shall Overcome Found.*, 221 F. Supp. 3d at 412 (same); *see also* 1 Nimmer on Copyright § 1.15[G] ("[A] state-law cause of action for unjust enrichment or *quasi* contract

---

[8]     To be clear, the mere existence of a mutually binding promise is not enough to remove a claim from Copyright Act preemption. *See supra* note 4. Nor, as explained below, is the fact that payment is demanded sufficient. Rather, it is the confluence of these two elements in a "promise to pay" that *Forest Park* holds is sufficient to remove a claim from Copyright Act preemption. 683 F.3d at 433.

should be regarded as an 'equivalent right' and, hence, preempted insofar as it applies to copyright subject matter.").

Here, plaintiff has not identified any basis, other than an intellectual property interest in the John Batchelor Show, that would entitle it to the advertising revenues generated by the show under a quasi-contract theory. In support of its claim for money had and received, plaintiff alleges that "[d]efendants received advertising revenue from Audioboom, pursuant to the [Batchelor-Audioboom Agreement], by misappropriating for itself the corporate identity of The John Batchelor Show, which at all times belonged to Plaintiff." Compl. ¶ 83. But the complaint itself alleges there has never been "any business entity named The John Batchelor Show," *Id.* ¶ 50, so it is clear that what was really allegedly misappropriated by defendants was the right to distribute the show and receive revenues therefrom. Similarly, in support of its unjust enrichment claim, plaintiff alleges that "[t]o the extent -- and during any period in which -- Plaintiff's obligations were not governed by written agreements," defendants were unjustly enriched "at Plaintiff's expense in that, *among other things*, Plaintiff enabled the creation of [John Batchelor] Show content for which it was unjustly deprived of advertisement revenue." *Id.* ¶ 97 (emphasis in original). Therefore, defendants' retention of the advertising revenues is unjust only if plaintiff had some intellectual property interest in the show itself, a theory that is clearly preempted by the Copyright Act.

Plaintiff argues these claims are not preempted because they "concern advertising money, not money for any copyrighted work's reproduction, adaptation, performance, distribution, or display." Pls. Opp. at 9; *see also id.* at 16 ("Because Plaintiff's right to recovery under Count III concerns the right to 'payment,' 'compensation,' 'proceeds,' or 'remuneration,' it is not one of the bundle of rights protected under the Copyright Act, and the requirement for preemption has not been met."). But the fact that plaintiff seeks damages is not, by itself, sufficient to make these claims qualitatively different from a claim for copyright infringement. *See Briarpatch*, 373 F.3d at 306 ("While enrichment is not required for copyright infringement, we do not believe that it goes far enough to make the unjust enrichment claim qualitatively different from a copyright infringement claim."); *cf. Harper & Row Publishers, Inc.,* 723 F.2d at 201 ("The enjoyment of benefits from derivative use is so intimately bound up with the right itself that it could not possibly be deemed a separate element" for purposes of Copyright preemption.). The Copyright Act's preemption provision would be rendered a dead letter if it could be circumvented simply by including a claim for monetary relief.[9]

---

[9]    *See Atrium Grp. de Ediciones y Publicaciones, S.L. v. Harry N. Abrams, Inc.*, 565 F. Supp. 2d 505, 509 (S.D.N.Y. 2008) ("The allegation that Plaintiffs failed to receive 'any advance payment, royalties, [or] remuneration of any kind whatsoever' from Defendants does not transform their copyright infringement claim into an unjust enrichment claim. If the law were otherwise, every time [a] copyright infringer obtained any profit from his infringing activity, the copyright owner would be able to assert a state claim for unjust enrichment. That would undermine § 301 preemption.").

Nor does the fact the damages sought here are for "advertising revenues," as opposed to for the direct sale of the show, change this conclusion. The Copyright Act expressly allows an aggrieved party to obtain as damages "any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(b). This includes not only the right to direct profits that "arise from the sale of the infringing good," but also indirect profits that are "derived from the use of the copyrighted work to promote sales of other products." *Structured Asset Sales, LLC v. Sheeran*, 632 F. Supp. 3d 192, 200 (S.D.N.Y. 2022), on reconsideration, 2023 WL 3475524 (S.D.N.Y. May 16, 2023). The advertising revenues plaintiff seeks as damages would very likely have been recoverable under the Copyright Act as indirect profits (assuming all other elements of such a claim were satisfied). Thus, the right to advertising revenues should be treated no differently, for preemption purposes, then revenues generated through the direct sale of the show.[10]

---

[10]   Indeed, even if the precise form of monetary relief sought were not available under the Copyright Act, that would not be dispositive. In the context of the subject-matter requirement, the Second Circuit has made clear that a claim may be preempted even where the material in question is not actually copyrightable because the purpose of the Copyright Act was not merely to define what is protected, but also to define what is not protected. *See Harper & Row Publishers, Inc.*, 723 F.2d at 200. By this same logic, allowing state-law remedies for copyright claims that are inconsistent with those remedies authorized by the Copyright Act would disrupt the balance of remedies Congress struck through its passage of the Act and thus would similarly fall afoul of preemption. *Cf. Aetna Health Inc. v. Davila*, 542 U.S. 200, 213-14 (2004) (adopting similar argument in analogous ERISA context).

Plaintiff cites two cases that found a quasi-contract claim not to be preempted. Pls. Opp. at 16-17 (citing *Levine v. Landy*, 832 F. Supp. 2d 176, 188 (N.D.N.Y. 2011) and *Katz Dochrermann & Epstein, Inc. v. Home Box Off.*, 1999 WL 179603, at *5 (S.D.N.Y. Mar. 31, 1999)). The Court does not find these decisions to be persuasive, because neither recognized the critical distinction between a breach of contract and quasi-contract claim. *See Forest Park Pictures*, 683 F.3d at 432-33. As noted above, plaintiff's breach of contract claim is not preempted insofar as it alleges defendants breached a promise to pay. But the very premise of these quasi-contract claims is that there was not any agreement between plaintiff and defendants concerning the relevant subject matter. *See* Compl. ¶ 97; *Fesseha v. TD Waterhouse Inv. Servs., Inc.*, 305 A.D.2d 268, 269 (N.Y. App. Div. 2003) ("An action for money had and received does not lie where there is an express contract between the parties."); *Goldman v. Simon Prop. Grp., Inc.*, 58 A.D.3d 208, 220 (N.Y. App. Div. 2008) ("[T]he existence of a valid and enforceable contract governing a particular subject matter generally precludes recovery in quasi contract"). Therefore, plaintiff's claim seeks to vindicate a right to payment from the use of a work within the general scope of copyright that is unmoored from any contractual commitment. Such a claim falls squarely within the scope of Copyright Act preemption.

Accordingly, the Court, in its Order of February 21, 2024, found plaintiff's claims for money had and received (Count One) and for unjust enrichment (Count Three) to be preempted by the Copyright Act.

### 4. Aiding and Abetting Breach of Fiduciary Duty (Against Batchelor) – Count Six

Count Six alleges Batchelor aided and abetted the breach of fiduciary duty of Nicholas Malone, who was an employee of plaintiff, by knowingly assisting and encouraging Malone to "(a) violat[e] Plaintiff's company policies for the benefit of Batchelor and/or United River Press; (b) assist[] Batchelor and/or United River Press in competing with Plaintiff for advertisement revenue; and (c) assist[] Batchelor and/or United Press [sic] in misappropriating Plaintiff's resources to produce content for their own exclusive benefit, and to Plaintiff's detriment." Compl. ¶ 111; *see id.* ¶¶ 108-10, 112.[11] Batchelor argues this claim is preempted by the Copyright Act because the only damages that plaintiff allegedly suffered as a result of Malone's breach were the misappropriation of advertising revenues and the copying of certain copyrighted materials. *See* Batchelor MTD, at 14. According to Batchelor, these damages "are simply impairments of Copyright Act rights." *Id.* Batchelor's argument is without merit for two reasons.

*First*, in Count Nine, plaintiff alleges that an implied-in-fact contract existed between plaintiff and Batchelor that entitled plaintiff to the advertising revenues that Malone assisted in the misappropriation of. This breach of contract claim is clearly not

---

[11]   Count Five asserts a substantive claim for breach of fiduciary duty against Malone. However, Malone has not yet appeared in the action and so that claim is not directly at issue in the current briefing.

preempted by the Copyright Act, concerning as it does the breach of a promise to pay,[12] and Batchelor does not even seek dismissal of the breach of contract claim on preemption grounds. Batchelor is thus incorrect that the damages flow solely from "impairments of Copyright Act rights." Batchelor MTD, at 14.

*Second*, the law is clear that a claim, such as this, that includes as an element a breach of a confidential or fiduciary relationship is not preempted insofar as the "right [a principal] seek[s] to vindicate is the right to redress violations of the duty owed to" the principal. *Briarpatch*, 373 F.3d at 307; *see Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992) (stating that "unfair competition claims based upon breaches of confidential relationships [and] breaches of fiduciary duties" are not preempted); *Sleppin v. Thinkscan.com, LLC*, 55 F. Supp. 3d 366, 377 (E.D.N.Y. 2014) (concluding claim for "usurpation of corporate opportunity" was "qualitatively different" than copyright claim where it included breach of fiduciary duty as element). Even if plaintiff had alleged that Malone assisted in copyright infringement by defendants, that claim would still not be preempted because it would require proof of the extra element of a breach of fiduciary duty. *See Briarpatch*, 373 F.3d at 307 (holding claim for breach of fiduciary duty was not preempted where plaintiff

---

[12]   The Second Circuit has made clear that a claim for breach of an implied-in-fact contract should be treated the same as a breach of an express contract, whereas a breach of implied-in-law contract (*i.e.*, quasi-contract) is generally preempted. *See Forest Park*, 683 F.3d at 433.

alleged partner failed to distribute proceeds from the creation of movie to remaining members of partnership because "the fact that these claims require a finding that there was a breach of fiduciary duty to begin with adds an extra element that makes the claims qualitatively different from a claim of copyright infringement"). Batchelor cites no case holding to the contrary.

Accordingly, in the Order of February 21, 2024, Batchelor's motion to dismiss plaintiff's aiding and abetting breach of fiduciary duty claim (Count Six) was denied.

### 5. Unfair Competition (Against Batchelor and Union River) – Count Four

Plaintiff asserts a claim for common-law unfair competition based on Batchelor's alleged bad-faith misappropriation of plaintiff's labors and expenditures in producing the John Batchelor Show. *See* Compl. ¶¶ 100-103. Batchelor argues plaintiff's unfair competition claim is preempted. *See* Batchelor MTD, at 13.

New York recognizes "two theories of common-law unfair competition: palming off and misappropriation." *TC Ltd. v. Punchgini, Inc.*, 880 N.E.2d 852, 858 (N.Y. 2007). Under the latter misappropriation theory, at issue here, "[t]he essence of an unfair competition claim . . . is that the defendant has misappropriated the labors and expenditures of another with some element of bad faith." *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 50-51 (2d Cir. 2019) (quotation omitted).

"[U]nfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by [the Copyright Act]." *Altai*, 982 F.2d at 717; *see, e.g.*, *ML Genius Holdings LLC v. Google LLC*, 2022 WL 710744, at *4 (2d Cir. Mar. 10, 2022) (affirming dismissal of unfair competition claim based on defendant's unauthorized copying of "lyric[] transcriptions" from plaintiff's website). However, "[u]nfair competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets have been held to satisfy the extra element test and avoid [Copyright Act preemption]." *Mourabit v. Klein*, 393 F. Supp. 3d 353, 362 (S.D.N.Y. 2019) (quotation omitted); *see, e.g., Quadrille Wallpapers & Fabric, Inc. v. Pucci*, 2011 WL 3794238, at *5 (N.D.N.Y. Aug. 24, 2011).

Plaintiff offers two arguments as to why its unfair competition claim is not preempted.

*First*, plaintiff argues that "the thing misappropriated here is not the value of the [John Batchelor] Show as a work, but the labor and expenditures spent to make sure the [John Batchelor] Show would even be on the air." Pls. Opp. at 15. Plaintiff points to "the labor of its employee, Malone, [it hired] to work exclusively for Batchelor," the studio space used by Batchelor that plaintiff provided, and Batchelor's wages as an independent contractor. *Id.* at 14. The problem with this argument is that every claim for common-law unfair competition requires a showing that there was some "misappropriat[ion of] the labors and expenditures of another," and so the mere invocation

of that is insufficient to escape preemption. *See Universal Instruments*, 924 F.3d at 50-51. Further, plaintiff's opposition makes clear that the relief it seeks is not limited to the value of these expenditures but also includes the "economic benefits" from the show that was allegedly misappropriated (i.e. the profits derived from the John Batchelor Show). Pls. Opp. at 19 ("Plaintiff seeks recompense for misappropriation of the labor and expenditures put into operation of the Show, only to have the economic benefits thereof misappropriated by Defendants.").[13] Thus, the fact plaintiff is seeking to recover labor and expenditures it invested to create the John Batchelor Show is not sufficient to remove plaintiff's unfair competition claim from Copyright Act preemption.

*Second*, plaintiff argues that insofar as its claim is based upon a breach of fiduciary duty by Malone, the claim involves an extra element and is not preempted. The bad faith element of an unfair competition claim can be satisfied either by showing some defendant engaged in commercial immorality such as fraud or deception, or by showing there was a breach of a confidential or fiduciary relationship.

---

[13]    Even assuming plaintiff were only seeking to recover labor and expenditures invested in the show, as opposed to profits derived therefrom, the Court is not convinced that such a theory would be viable as a substantive matter. The tort of unfair competition "usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property." *RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*, 2023 WL 5976273, at *10 (S.D.N.Y. Sept. 14, 2023) (quotation omitted). A claim seeking repayment of expenses, without more, would essentially just be a claim for unjust enrichment or quasi-contract, which would be precluded by the existence of a contract between the parties concerning the same subject matter.

*See Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001) ("The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." (quotation omitted)). To the extent plaintiff relies solely on a theory of breach of fiduciary duty, plaintiff's claim is not preempted because the claim contains an extra element. *See Mourabit*, 393 F. Supp. 3d at 362; Nimmer on Copyright § 1.15[F](3) (noting that unfair competition claims are preempted unless "another element is present (such as breach of fiduciary duty) that creates a qualitatively different claim").

Batchelor's only response is to argue that he is not a fiduciary of plaintiff. *See* Batchelor Reply, at 7. As explained *infra*, the Court agrees the complaint has not alleged Batchelor is a fiduciary of plaintiff. But the theory of plaintiff's unfair competition claim, as articulated in its opposition brief, is that a breach of fiduciary duty by *Malone*, not Batchelor, satisfies the bad faith prong. *See* Pls. Opp., at 14-15. As with the aiding-and-abetting claim discussed above, this theory is not preempted.[14]

---

[14]    Batchelor does not question that, as a substantive matter, an unfair competition claim against him can be based upon a third-party's (i.e. Malone's) breach of fiduciary duty. Accordingly, the Court assumes for the sake of this motion that such a claim is viable.

Accordingly, in the Court's Order of February 21, 2024, the motion to dismiss plaintiff's unfair competition claim (Count Four) was denied insofar as the claim was predicated upon a breach of fiduciary duty by Malone, but in all other respects the motion to dismiss this claim was granted.

### B. <u>Motion to Dismiss - Failure to State a Claim</u>

1. <u>Misappropriation of Corporate Opportunity (Against Batchelor and Union River) and Accounting (Against Batchelor, Union River Press, Audioboom, and The Weiss Agency)- Counts Two and Eleven</u>

Plaintiff asserts a claim for misappropriation of corporate opportunity against Batchelor (Count Two) and a claim for an equitable accounting against Batchelor, Audioboom and Weiss (Count Eleven). *See* Compl. ¶¶ 88-95, 142-147.[15] Defendants have moved to dismiss these claims on the grounds that, *inter alia*, plaintiff has failed to allege that there existed the kind of confidential or fiduciary relationship between plaintiff and these defendants necessary to support them. *See* Batchelor MTD, at 20; Audioboom MTD, at 20-21.

"The corporate opportunity doctrine provides that 'corporate fiduciaries and employees cannot, without consent, divert and exploit for their own benefit any opportunity that should be deemed an asset of the corporation.'" *Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, 2015 WL 7078641, at *4 (S.D.N.Y. Nov. 12, 2015) (quoting *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 147 A.D.2d 241, 246

---

[15]    As previously noted, the complaint incorrectly labelled plaintiff's eleventh claim for an accounting as Count Ten, when it should have been labelled as Count Eleven, as the Court does here.

(N.Y. App. Div. 1989)). To state a claim for equitable accounting, plaintiff must establish "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." *Baiul v. NBC Sports*, 2016 WL 1587250, at *10 (S.D.N.Y. Apr. 19, 2016), *aff'd sub nom.*, 708 F. App'x 710 (2d Cir. 2017) (quotation omitted). Both a claim for misappropriation of corporate opportunity and for an equitable accounting are "premised upon the existence of a confidential or fiduciary relationship." *Jacobs v. Cartalemi*, 156 A.D.3d 605, 608 (N.Y. App. Div. 2017) (quotation omitted); *see Le Metier Beauty Inv. Partners LLC*, 2015 WL 7078641, at *4.

"A fiduciary relationship 'exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" *EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 19-20 (2005) (quoting Restatement (Second) of Torts § 874, cmt. a). "Put differently, [a] fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other." *Roni LLC v. Arfa*, 18 N.Y.3d 846, 848 (2011) (internal quotation marks omitted). "In New York, a conventional business relationship, without more, is insufficient to create a fiduciary relationship. Rather, a plaintiff must show special circumstances that transformed the parties' business relationship into a fiduciary one." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 183-84 (2d Cir. 2023) (internal quotation marks omitted); *see,*

*e.g.*, *DiTolla v. Doral Dental IPA of New York, LLC*, 953 N.Y.S.2d 155, 157 (2012) ("Here, the defendants established, prima facie, their entitlement to judgment as a matter of law by demonstrating that the parties had a conventional business relationship, which did not create a fiduciary relationship."); *Dayan Enterprises, Corp. v. Nautica Apparel, Inc.*, 2003 WL 22832706, at *1 (S.D.N.Y. Nov. 26, 2003) (suggesting ordinary licensor-licensee relationships do not usually "rise[] to the level of a fiduciary relationship"). As explained below, the Court agrees that plaintiff failed to adequately allege facts showing that a fiduciary relationship existed between plaintiff and either Batchelor, Audioboom or Weiss.

**Batchelor.** To support the existence of a fiduciary relationship between Batchelor and plaintiff, the complaint offers nothing more than the conclusory allegation that, "[a]s stewards of Plaintiff's studio resources and supervisors of Plaintiff's employees, Batchelor . . . owed fiduciary duties to Plaintiff." Compl. ¶ 93. At no point does the complaint allege that Batchelor was an employee of plaintiff, and the complaint in fact elsewhere alleges Batchelor was an "independent contractor." *Id.* ¶ 143.

These allegations are insufficient to demonstrate a fiduciary relationship existed between Batchelor and plaintiff. Plaintiff has not alleged that, pursuant to their relationship, plaintiff "reposed confidence in [Batchelor] and reasonably relied on [Batchelor's] superior expertise or knowledge." *Pauwels*, 83 F.4th at 183 (quotation omitted). Nor is there any suggestion that the parties intended

Batchelor to act as plaintiff's agent or act solely for the benefit of plaintiff.

The absence of such allegations is particularly telling because "where parties have entered into a contract, courts look to that agreement to discover ... the nexus of [the parties'] relationship and the particular contractual expression establishing the parties' interdependency." *EBC I*, 5 N.Y.3d at 19–20 (internal quotation marks omitted). The 2012 Batchelor agreement repeatedly describes Batchelor as an "independent contractor" employed not by plaintiff but rather by Union River (a shell company owned by Batchelor). *See* 2012 Batchelor Agreement § 5(a). It expressly states that Batchelor is not "authorized to bind [plaintiff] in any manner . . . or to act in the name of and/or on the behalf of [plaintiff]." Id. Indeed, the complaint itself describes Batchelor as an independent contractor. *See* Compl. ¶ 143. The fact that, as alleged in the complaint, Batchelor and plaintiff routinely engaged in arms-length negotiations to modify the Batchelor Agreement also undermines the existence of a fiduciary relationship. *See Abercrombie*, 438 F. Supp. 2d at 274 ("[F]iduciary relationships typically do not arise between parties engaging in arms length business transactions, especially those where the parties are each represented by counsel or other professional advisors." (internal citation omitted)). In short, the complaint contains no non-conclusory allegations to suggest that the relationship between Batchelor and plaintiff gave rise to fiduciary duties.

Plaintiff argues that "[a]n independent contractor can owe its employer fiduciary duties." Pls. Opp. at 19. The case plaintiff cites for this proposition simply states that "[t]he fact that an individual is labeled an 'independent contractor' does not defeat the existence of a fiduciary relationship." *Grand Heritage Mgmt., LLC v. Murphy*, 2007 WL 3355380, at *7 n.15 (S.D.N.Y. Nov. 7, 2007). It is true that the mere fact a contract labels an individual as an independent contractor is not, by itself, dispositive of whether an employment relationship exists, but here it was not a contract but plaintiff's own allegations that offered up that designation. And regardless, the fact that it is possible someone labeled an "independent contractor" *could* owe fiduciary duties does not help plaintiff here, where the complaint contains no allegations giving rise to an inference that such duties existed here.

**Audioboom.** With respect to Audioboom, the complaint offers up nothing more than the general allegation that, under the CM-Audioboom Agreement, Audioboom "owes Plaintiff the duty to fully account for all advertisement revenue earned by it and payable to Plaintiff in connection with the [John Batchelor] Show." Compl. ¶ 144. But in general, arms-length business arrangements are insufficient to create fiduciary obligations that might support an accounting. *See Dayan*, 2003 WL 22832706, at *1; *Faulkner v. Arista Recs. LLC*, 602 F. Supp. 2d 470, 482 (S.D.N.Y. 2009) (noting that "an arm's length business transaction, even those where one party has superior bargaining power, is not enough to give rise to a fiduciary relationship" and dismissing

accounting claim based on absence of fiduciary relationship between record label and artist). This is especially true here, where the CM-Audioboom Agreement itself makes clear that "the Parties hereto are acting hereunder as independent contractors and not as agents and nothing hereunder shall be deemed to create a relationship of partnership, joint venture, agency or employment." CM-Audioboom Agreement § 11. Indeed, the very existence of the CM-Audioboom Agreement, and the right to damages thereunder, likely precludes any standalone claim for an equitable accounting. *See Telesco v. Neuman*, 2015 WL 2330166, at *7 (S.D.N.Y. Mar. 11, 2015) ("Plaintiff's accounting claim must be dismissed because he cannot allege he has no adequate legal remedy. An equitable accounting claim cannot coexist with a breach of contract claim covering the same subject matter." (internal quotation marks omitted)).

**Weiss.** With respect to Weiss, the complaint alleges that Weiss served as plaintiff's agent in connection with the show, albeit in a fairly conclusory manner. *See* Compl. ¶¶ 3, 145. This allegation has a greater degree of plausibility than those regarding the other defendants, however, because Weiss is in the business of representing individuals and entities in such transactions. *See* Compl. ¶¶ 70, 145. The agency relationship created through such representations is of a kind that might well give rise to a fiduciary relationship.

While therefore a closer question, the Court nonetheless finds the allegations regarding Weiss are insufficient to infer a fiduciary relationship existed between Weiss and plaintiff. The complaint offers

very little in the way of detail to support the fairly conclusory allegation that Weiss served as plaintiff's agent. What is more, the complaint apparently contradicts itself on this score, alleging Weiss acted as "the agent for both Audioboom and Batchelor" in connection with the Batchelor-Audioboom Agreement, *id.* ¶ 70, and as Audioboom's agent in connection with the CM-Audioboom Agreement, *id.* ¶ 72. The complaint also alleges that, when plaintiff wanted to renegotiate the Batchelor Agreement in February 2021, "Plaintiff asked to meet with Batchelor and The Weiss Agency -- which was acting as Batchelor's agent." *Id.* ¶ 75. Further the 2012 Batchelor Agreement designates Weiss as the recipient for any notices to be sent to Batchelor pursuant to the agreement, strongly suggesting that even in 2012 Weiss was Batchelor's agent. *See* 2012 Batchelor Agreement § 18(e). Weiss could not, of course, have acted as the agent for adverse parties on both sides of these transactions.

Reviewing the complaint and documents incorporated therein, the most likely inference seems to be that Weiss worked principally for Batchelor and Audioboom, but not plaintiff. In any case, the Court is simply unable to conclude that Weiss owed plaintiff the kind of duty of undivided loyalty characteristic of a fiduciary relationship.[16]

---

[16]   Plaintiff's claim for an equitable accounting against Weiss appears deficient in another respect not raised by the parties. The complaint nowhere plausibly alleged that Weiss was entrusted with "money or property . . . imposing upon [it] a burden of accounting." *Baiul*, 2016 WL 1587250, at *10. While the complaint demands that Weiss "fully account for all advertisement revenue earned by it and payable to Plaintiff in connection with the [John Batchelor] Show," there is no allegation Weiss actually was responsible for collecting any such

Plaintiff argues that any determination of whether a fiduciary relationship exists is necessarily fact specific, and so is not appropriate for resolution at this stage. *See* Pls. Opp. at 19-20; *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, 2009 WL 321222, at *9 (S.D.N.Y. Feb. 9, 2009) ("Because the inquiry as to whether a fiduciary relationship exists is necessarily fact-specific, a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)." (internal citations and quotation marks omitted)). But notwithstanding the fact-specific nature of the inquiry, dismissal is proper where, as here, the complaint is completely devoid of non-conclusory allegations that support the existence of a fiduciary relationship. *See, e.g.*, *Pauwels*, 83 F.4th at 184 (affirming dismissal of complaint where the "non-conclusory allegations in the SAC demonstrate that [defendant's] relationship with [plaintiff] was no more than a standard business relationship of mutual economic benefit, comparable to an employer-employee relationship negotiated at arm's length").

Because plaintiff failed to allege such a fiduciary relationship existed between it and Batchelor, Audioboom or Weiss, the motion to dismiss plaintiff's claim for misappropriation of corporate

---

advertising revenues. Compl. ¶ 145. And while the complaint suggests Weiss "was involved in marketing podcasts of the [John Batchelor] Show," *id.*, and so may have knowledge of moneys received by Audioboom in connection with it, a claim for equitable accounting requires that the defendant, not a third party, receive the funds.

opportunity (Count Two) and for an equitable accounting (Count Eleven) were granted in the Order of February 21, 2024.[17]

### 2. Implied-in-Fact Contract (Against Batchelor and Union River) – Count Nine

The complaint alleges that, even after the expiration of the Batchelor Agreement in December 2018, plaintiff and Batchelor "continued to act as though they were governed by the terms of the agreement," continuing to "rend[er] their respective service[s] . . . in accordance with the terms of the written contract." Compl. ¶ 132. Plaintiff claims that Batchelor breached the implied-in-fact contract that was thereby created by entering into the Batchelor-Audioboom Agreement. *See id.* ¶¶ 128-136. Batchelor argues that plaintiff's breach of implied-in-fact contract claim should be dismissed because plaintiff "cannot allege an implied-in-fact contract when a written contract exists governing the same subject matter." Batchelor MTD, at 18. Batchelor's argument fails for two reasons.

*First*, the 2012 Batchelor Agreement contains the following provision:

> In the event that [the] engagement continues for any period of time following the stated expiration date of this Agreement, unless and until agreed to in a new subscribed written document, such engagement or continuation thereof e [sic] shall be pursuant to the terms and conditions of this Agreement.

---

[17] Defendants also moved to dismiss plaintiff's misappropriation of corporate opportunity and equitable accounting claims as preempted by the Copyright Act. The Court does not reach this question in light of its conclusion that plaintiff has otherwise failed to state a claim in the corresponding counts.

Batchelor Agreement § 18(b). Plaintiff's complaint admittedly did not reference this provision, and this claim is styled as one for breach of implied-in-fact contract. Nonetheless, even accepting Batchelor's argument that a written agreement covers the parties conduct (i.e. the Batchelor Agreement), this provision makes clear dismissal would not be warranted, specifying as it does that the obligations in that written contract continued insofar as the parties continued to perform.

*Second*, even were the Court to disregard the above provision, that would still not warrant dismissal. A robust line of cases holds that the "'parties' conduct after the expiration of [a] written contract, including [a party's] continued rendition of services, [the other party's] acceptance of those services and . . . payment . . . in accordance with the terms of the written contract' can 'establish a contract implied in fact with substantially the same terms and conditions as embodied in the expired written contract.'" *Nasdaq, Inc. v. Exch. Traded Managers Grp., LLC*, 431 F. Supp. 3d 176, 238 (S.D.N.Y. 2019) (quoting *Watts v. Columbia Artists Mgmt. Inc.*, 591 N.Y.S.2d 234, 236 (N.Y. App. Div. 1992)). While it is true that the existence of an express contract on-point precludes any implied contract claim, if one accepts that the express contract did not continue then there was plainly no contract covering the subject matter of the parties conduct that might displace the implied-in-fact agreement that arose. None of the cases cited by Batchelor addressed the situation where an express contract has expired, and it is the parties conduct *after* the

expiration that created the implied-in-fact contract, as is alleged here.[18]

Accordingly, the Court, in its Order of February 21, 2024, denied Batchelor's motion to dismiss plaintiff's claim for breach of implied-in-fact contract (Count Nine).

### 3. Tortious Interference (Against Batchelor and The Weiss Agency) – Count Eight

The complaint alleges that Batchelor and Weiss tortiously induced Audioboom to breach the CM-Audioboom Agreement when the Batchelor-Audioboom Agreement was entered. *See* Compl. ¶¶ 123-127. Batchelor and Weiss argue plaintiff has failed to allege a tortious interference claim against them, because the complaint does not adequately allege what, if anything, Batchelor or Weiss did to induce Audioboom's breach of the CM-Audioboom Agreement. *See* Batchelor MTD, at 17-18. They further argue that the complaint fails to allege they had knowledge of the terms of the CM-Audioboom Agreement. *Id.*

To state a claim for tortious interference with contract, plaintiff must allege "(1) the existence of a valid contract between

---

[18]   *See Tri-City ValleyCats, Inc. v. Hous. Astros, LLC*, 72 Misc. 3d 1219, *3 (Sup. Ct. N.Y. Cty. 2021) (no continued performance after termination); *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 455 (S.D.N.Y. 2014) ("Plaintiffs allege that the express contract was terminated by the breach, and have not provided any suggestion that there was mutual assent between the parties following Big Time Toys' failure to cure its default"); *Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 413 (S.D.N.Y. 2011) (express contract existed that was never terminated); *Peter Lampack Agency, Inc. v. Grimes*, 93 A.D.3d 430, 430-31 (1st Dep't 2012) (same); *Tjoa v. Julia Butterfield Memorial Hosp.*, 205 A.D.2d 526, 526 (2d Dep't 1994) (after expiration of agreement, no conduct indicating an intent to continue to perform under previous terms).

the plaintiff and a third party, (2) the defendant's knowledge of that contract, (3) the defendant's intentional procurement of a third-party's breach of contract without justification, and (4) damages." *Kaplan v. Reed Smith LLP*, 919 F.3d 154, 160 (2d Cir. 2019).

With respect to the knowledge element, the complaint alleges that Batchelor and Weiss were "aware of the terms of the" CM-Audioboom Agreement. Compl. ¶ 126. The complaint suggests Weiss gained this knowledge through its role as Audioboom's agent in negotiating the CM-Audioboom Agreement and then used that knowledge to broker the Batchelor-Audioboom Agreement. *See id.* ¶¶ 3, 70-73. Plaintiff argues it is reasonable to infer that the terms of the agreement were communicated to Batchelor during this process of negotiation. Pls. Opp. at 20-21.

With respect to intent, the complaint alleges Batchelor and Weiss "intentionally induced Audioboom's violation of the agreement." Compl. ¶ 126. The complaint alleges that "The Weiss Agency intentionally used its inside knowledge of Cumulus's and WABC Radio's business to cut them out of the benefits of the CM-AB Agreement, all while profiting from the [Batchelor-Audioboom Agreement]." *Id.* ¶ 73. The complaint alleges that Batchelor also substantially benefited from this breach, increasing the share of advertising revenues he received. *Id.* ¶¶ 54-55.

While these allegations are not the most detailed, they are sufficient to satisfy the minimal notice pleading standard of Rule 8(a). The complaint offers a basis to plausibly infer defendants

had knowledge of the terms of the CM-Audioboom Agreement and sets forth a plausible profit motive for defendants to induce a breach of that agreement. This is sufficient at this stage to state a claim. Accordingly, the Court, in its Order of February 21, 2024, denied Batchelor's and Weiss's motion to dismiss plaintiff's tortious interference with contract claim against them (Count Eight).

### 4. Tortious Interference with Implied-in-Fact Contract (Against Audioboom and The Weiss Agency) – Count Ten

Plaintiff also asserts a tortious interference with contract claim against Audioboom and Weiss, alleging they wrongfully induced Batchelor to breach the implied-in-fact contract between Batchelor and plaintiff concerning the distribution of the show when they entered into the Batchelor-Audioboom Agreement. *See* Compl. ¶¶ 137-141. Defendants argue this tortious interference claim suffers from three fatal deficiencies: (1) "a contract that is terminable at will cannot form the basis for a tortious interference with contract claim," (2) plaintiff has failed to allege Audioboom's knowledge of the Batchelor Agreement's terms and (3) plaintiff has failed to allege Audioboom's intent to induce a breach. Audioboom MTD, at 16; *see* Batchelor MTD, at 19-20. Because the Court agrees with the first of these arguments, the Court does not reach the latter two arguments.

While it is incorrect to say that a contract that is terminable at will can never form the basis for a tortious interference claim, New York courts have treated such a claim as akin to one for tortious interference with prospective economic advantage and have thus

required that plaintiff allege the breach was induced through wrongful
means "consisting of fraudulent representations, threats or . . . [a]
violation of a duty of fidelity owed to the plaintiff by the defendant
by reason of a relation of confidence existing between them." *Guard-
Life Corp. v. S. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 451 (N.Y.
1980).[19] Thus, notwithstanding its misunderstanding of New York law,
Audioboom's argument is essentially correct in this case. Plaintiff
does not contest that the agreement between Batchelor and plaintiff
would have been terminable at will. And plaintiff's complaint is devoid
of any allegations that might satisfy the heightened standard that
applies to tortious interference claims in such circumstances. The
complaint contains no allegations that Batchelor was either threatened
or induced to breach the agreement through fraud and, as explained
*supra* Section II.B.1, plaintiff has not adequately alleged that
Batchelor, Audioboom or Weiss owed any fiduciary duties to plaintiff.
Accordingly, the Court, in its Order of February 21, 2024, granted the
motions to dismiss plaintiff's tortious interference with implied-in-
fact contract claim against Audioboom and Weiss (Count Ten).

---

[19]     Indeed, Audioboom wrongly claims that one of the two cases
it cites dismissed a tortious interference claim based upon an at-will
contract, when in fact the case declined to dismiss on this ground,
finding plaintiff had sufficiently alleged that the breach was induced
through "wrongful means" (i.e. "repeated threats to [plaintiff's]
clients by [defendant]." *Taboola, Inc. v. Ezoic Inc.*, 2020 WL 1900496,
at *9 (S.D.N.Y. Apr. 17, 2020); *see* Audioboom MTD, at 16
(mischaracterizing this case).

C. **Motion to Remand**

Plaintiff has cross-moved to have the case remanded for lack of subject matter jurisdiction. Subject matter jurisdiction here is based exclusively upon Copyright Act preemption, which provides a federal court with jurisdiction "over state law claims preempted by the Copyright Act." *Red Apple I*, 636 F. Supp. 3d at 472 (quoting *Briarpatch*, 373 F.3d at 305). "[S]o long as federal question jurisdiction exists over a 'single claim,' removal of the entire case is proper." *Id.* As explained above, several of plaintiff's claims are completely or partially preempted, and so the Court has jurisdiction.

The question remains whether, having dismissed those preempted claims (or portions thereof), the Court should continue to exercise supplemental jurisdiction over the remaining claims. A district court's supplemental jurisdiction extends to all claims that "form part of the same case or controversy under Article III of the United States Constitution" as a claim over which the court has original jurisdiction. 28 U.S.C. § 1367(a). "A state law claim forms part of the same controversy if it and the federal claim derive from a common nucleus of operative fact." *Briarpatch*, 373 F.3d at 308 (internal quotation marks omitted). Where a district court dismisses all claims over which it has original jurisdiction, the district court has discretion to dismiss or remand the remaining state-law claims, but is not required to do so. *See* 28 U.S.C. § 1367(c)(3); *Briarpatch*, 373 F.3d at 308 ("This decision [of whether to retain supplemental

jurisdiction] is left to the exercise of the district court's discretion.").

Here, the claims that were dismissed and those that were not plainly formed the same case or controversy, so the Court has subject matter jurisdiction. After considering the relevant factors, the Court has determined to exercise supplemental jurisdiction over the remaining claims. In particular, the Court finds the purposes of Copyright Act preemption would be best served by doing so. In the Copyright Act's broad preemption provision, Congress made a strong determination that federal law is intended to displace state law as to a broad set of claims. The complete preemption doctrine, which grants jurisdiction over removed claims based upon this broad preemption provision, assumes that it is important to have a federal forum to police the line between preempted and non-preempted claims. *See Briarpatch*, 373 F.3d at 304-05.

As explained above, many of the claims here are only partially preempted. Policing the line between the preempted and non-preempted portions of these claims will be an ongoing task that will continue through trial. It therefore makes particular sense for the Court to exercise supplemental jurisdiction here. Otherwise, a state court will be left to puzzle out the precise scope of the Court's prior preemption ruling and the extent of Copyright Act preemption as the case moves forward. Accordingly, the Court, in its Order of February 21, 2024, denied the motion to remand.

New York, NY
April  8 , 2024

JED S. RAKOFF, U.S.D.J.